ANDERSON, Justice,
for the Court:
This is an appeal from a decree of the Chancery Court of Leflore County denying plaintiff’s [Mathews Brake] bill for specific performance of an agreement pursuant to corporate by-laws.
In 1949 Dr. Woodford W. Sneed and eleven others, mainly residents of the Greenwood area, formed Mathews Brake Hunting & Fishing Club, Inc. for the stated purpose of acquiring and holding lands and waters for hunting, fishing and trapping, establishing game and fish preserves and maintaining and operating a private hunting and fishing club for the use and recreation of the stockholders and guests.
In 1964 the corporate charter was amended to allow the corporation to engage in farming operations on the corporation’s land or to lease and rent land to others. Except for the collection of crop rentals from a tenant farmer on the club’s land, there is no record of the club having conducted such operations. According to uncontradicted testimony at trial, the club was conducted solely for recreation, hunting, fishing and related outdoor activities by the members. The corporation never paid a dividend and was not operated for the purpose of making a profit. It was capitalized by the issuance of twelve shares of common stock, one to each of the charter members. Each charter member paid $500 for his share. The original by-laws of the corporation provided that no stock would be transferred without the consent of the Board of Directors. At a special meeting of the Board of Directors on March 20, 1953, the following amendment to the by-laws was proposed:
Stock is non-transferable. In the event of the death of a stockholder, or other reasons satisfactory to a majority of the stockholders, stock shall be surrendered to the corporation in consideration of payment of book value. Book value shall be determined by a vote of the stockholders at each annual meeting, and only at each annual meeting. Disposition of stock shall be determined by a majority vote of stockholders at the regular annual meeting and only at the regular annual meeting.
This amendment was adopted by unanimous vote of those stockholders present. Dr. Woodford Sneed was not present, but the minutes of the meeting show that the secretary dispatched a copy of a letter notifying him of the action taken. The record shows that between 1953 and 1974, there were at least nine occasions on which stock was surrendered to the corporation under the provisions of this by-law upon the death or retirement of a member. The degree to which Dr. Woodford Sneed participated in these transactions is in controversy. It was the practice of the club to fix the value of such stock as the sum of an agreed upon figure (initially set at $2,000 and later increased to $3,000) and a pro-rata share of the cash resources of the club, called the “cash equities”.
Dr. Sneed died on March 15, 1974. The club, following its customary procedure, established the value of the stock as $4,132.89.[1] The club offered this amount to Ralph Sneed, executor of Dr. Sneed’s estate, in exchange for Dr. Sneed’s share of stock. Sneed refused the offer, contending that the dramatic increase in the value of duck-hunting land in the Delta had given the share of stock an actual value far in excess of the agreed-upon price. The club then filed a bill in the Chancery Court of Leflore County seeking specific performance or, in the alternative, a declaration that Dr. Sneed’s estate was estopped to assert the invalidity of the by-law because of his acquiescence in the club’s practice during his life.
At trial, the chancellor heard uncontra-dicted expert testimony that the value of the duck-hunting land in the Delta had appreciated dramatically in recent years due to “tremendous demand” for it. The expert gave his opinion that the club’s land *813 was worth $274,343 at Dr. Sneed’s death and $589,255 at the time of trial. In a thirteen member club, Dr. Sneed’s share would have been worth approximately $21,-000 at his death and $45,325, at trial.
After taking the case under advisement for the unusually long period of three years, the chancellor issued a decree for defendant Ralph Sneed. He found that the by-law in question had been invalidly adopted, and could not be enforced under any contractual theory because the agreed-upon price constituted grossly inadequate consideration. He also held that because of the terrific increases in the price of Delta land occurred after Dr. Sneed’s supposed acts of acquiescence, his estate was not estopped from attacking the restriction. He further refused to require the appellee to surrender his share of stock to the appellant at the price offered.
This Court will not reverse a chancellor’s ruling on a controverted issue of fact unless it is evident from the record that he was manifestly wrong. Duane v. Saltaformaggio, 455 So.2d 753, 757 (Miss.1984); Gold v. LaBarre, 455 So.2d 739, 747 (Miss.1984); Tucker v. Tucker, 453 So.2d 1294, 1296 (Miss.1984). We are of the opinion, and so hold, that under the facts of this case there was substantial evidence supporting the chancellor’s finding of fact and it will not be disturbed. Accordingly, the decree of the chancellor is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.

. The club’s use of the term bookvalue in its by-laws did not mean the conventional term, whereby a corporation determines bookvalue of a share of stock by dividing the net worth (assets minus liabilities) by the number of shares outstanding.