MAXWELL, J.,
for the Court:
¶ 1. The members of a Mississippi law firm, operating as a professional limited liability company, voted unanimously to expel one of their fellow members, David L. Martindale. Under the terms of the firm’s operating agreement, upon expulsion of a member, the remaining members were required to either (1) dissolve the company or (2) pay the terminated member $1,100 for each percentage point of membership interest owned. The remaining members voted to pay Martindale $19,800 for his eighteen-percent interest rather than dissolve the firm. The firm then filed for declaratory relief, alleging it had satisfied its contractual obligations to Martindale. The chancellor agreed and granted summary judgment in the firm’s favor. While Martindale argues the result is unjust and that the chancellor had equitable powers to provide him a more favorable figure, we find the firm followed the unambiguous terms of its operating agreement when paying Martin his membership interest upon expulsion. We find no error in the chancellor’s grant of summary judgment in the law firm’s favor and affirm.
Facts and Procedural History
¶ 2. David L. Martindale practiced law in Laurel, Mississippi, with Hortman Harlow Bassi Robinson & McDaniel PLLC for approximately fourteen years. Martindale was a member of the firm in 2006 when it undertook the representation of Billy Jack McDaniel, a plaintiff injured in an oil-field accident in Texas.[1] The law firm anticipated a substantial recovery and devoted nearly all of its resources to litigating McDaniel’s personal-injury case. Martin-dale — who was not directly involved in McDaniel’s representation — openly questioned and criticized the extent of these expenditures. He believed the attention placed on the McDaniel case negatively impacted the firm’s other fee-generating business. Martindale’s criticisms persisted, allegedly creating tension between himself and the other members.
¶ 3. Hortman Harlow’s operating agreement provided for the expulsion of any member by a unanimous vote of the other members. Upon expulsion of a member, the operating agreement instructed the remaining members to either (1) dissolve the company or (2) pay the terminated member $1,100 for each percentage point of membership interest he or she owned. On February 24, 2009, the law firm notified Martindale of his expulsion by a unanimous vote of the other members. The firm elected not to dissolve the company, but rather, as permitted by the operating agreement, tendered Martindale a check for $19,800, representing his eighteen-percent membership interest. Martindale refused to accept the check, claiming $19,800 did not reflect his fair share of the law firm.
1Í 4. On May 6, 2009, Hortman Harlow filed for declaratory relief in the Jones County Chancery Court, alleging it had fulfilled its contractual obligations to Mar-tindale under the operating agreement. Martindale counterclaimed, seeking the *341 fair value of his membership interest as well as actual and punitive damages for assault, battery, and intentional infliction of emotional distress. In September 2009, the McDaniel case settled, and Hortman Harlow received approximately $7,655,000 in attorneys’ fees. Martindale sought a preliminary injunction prohibiting the law firm from disbursing his alleged share of the fee. The chancery court granted the injunction and ordered Hortman Harlow to set aside eighteen percent of the fee pending resolution of the dispute.
¶ 5. Hortman Harlow then moved for partial summary judgment with respect to its claim for declaratory relief and Martin-dale’s non-tort counterclaims. At issue was whether the operating agreement provided Martindale’s exclusive remedy for payment after his expulsion. The chancery court found the language of the agreement clear and unambiguous and granted partial summary judgment in Hortman Harlow’s favor.[2]
Standard of Review
¶ 6. We conduct a de novo review of a trial court’s grant or denial of a motion for summary judgment. Lewallen v. Slawson, 822 So.2d 236, 237 (¶ 6) (Miss.2002) (citations omitted). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). In determining the propriety of summary judgment, we view the facts in the light most favorable to the nonmovant. Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss.1999).
Discussion
¶ 7. Because Martindale did not challenge the firm’s contractual authority to terminate his membership, we need not consider whether Martindale’s expulsion was proper. Instead, our inquiry is limited to deciding whether Hortman Harlow satisfied its contractual obligations to Mar-tindale after his expulsion. Specifically, we must decide if sections 9.2(a) and 9.5 of the law firm’s operating agreement provided Martindale’s exclusive right to payment after his expulsion.
I. Whether Hortman Harlow’s operating agreement or Mississippi law provides Martindale with any right to additional payment.
¶ 8. Section 9.5 of Hortman Harlow’s operating agreement states: “Upon the termination of a Member’s Membership Interest under Section 9.1(b) ..., the other Members may elect either (1) to pay an amount equal to the terminated Members [sic] points as calculated pursuant to Section 9.2(a) less any debt to the company; or (2) to dissolve the Company....” Section 9.2(a) provides the payment formula for a terminated member’s interest in the law firm: “The terminating Member shall receive an amount equal to One Thousand One Hundred and No/100 Dollars ($1,100.00), multiplied by each percentage point of Membership Interest owned by the terminating Member as set forth on Schedule “B” in lieu of his positive capital account balance.... ”
¶ 9. In Mississippi, “an LLC operating agreement is a contract” and *342 should be interpreted according to contract law. Bluewater Logistics, LLC v. Williford, 55 So.3d 148, 159 (¶ 45) (Miss.2011). We generally apply a three-step analysis when reviewing contract interpretation. Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 752 (¶ 10) (Miss.2003). The first step requires that we determine whether the contract is ambiguous. Id. If it is not, we must “accept the plain meaning of a contract as the intent of the parties.” Ferrara v. Walters, 919 So.2d 876, 882 (¶ 13) (Miss.2005) (citations omitted). If we cannot ascertain the contract’s meaning and the parties’ intent within the contract’s “four corners,” we apply the “ ‘canons’ of contract construction.” Cherokee Ins. Co. v. Babin, 37 So.3d 45, 48 (¶ 8) (Miss.2010). If the meaning of the contract is still ambiguous, we turn to extrinsic evidence. Royer Homes, 857 So.2d at 753 (¶ 11).
¶ 10. However, in summary-judgment cases, reviewing courts must focus solely on the first step of the analysis and determine whether the contract is ambiguous. If it is not, the “parties are bound by the language of the instrument.” Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So.2d 400, 404 (Miss.1997) (quoting Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss.1987)). But if the contract’s terms are ambiguous or subject to more than one interpretation, summary judgment must be reversed and the case should proceed to trial. Royer Homes, 857 So.2d at 752 (¶ 8).
A. Review for Ambiguity
¶ 11. Our review for ambiguity requires that we consider the express wording of the contract as a whole. Babin, 37 So.3d at 48 (¶ 8). We must “accept the plain meaning of a contract as the intent of the parties where no ambiguity exists.” A & F Props., LLC v. Madison Cnty. Bd. of Supervisors, 933 So.2d 296, 301 (¶ 12) (Miss.2006) (quoting Ferrara, 919 So.2d at 882 (¶ 13)). “The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law.” Delta Pride Catfish, 697 So.2d at 404.
¶ 12. Here, the plain language of section 9.5 enumerates that when Hortman Harlow expels a member, the remaining members may either (1) pay the terminated member an amount calculated under the formula in section 9.2(a) or (2) dissolve the law firm and share the liquidation proceeds with all members, including the terminated member. Section 9.2(a) then provides that a terminated member shall receive $1,100 for each “percentage point of membership interest owned by the terminated member.” This payment is tendered “in lieu of [a terminated member’s] positive capital account balance.” We find the only reasonable interpretation of sections 9.2(a) and 9.5 is that the parties intended for these sections to provide a member’s exclusive right to compensation upon his or her expulsion.[3]
*343 B. Section 13.10 and Additional Remedies
¶ 13. While these provisions are clear and unambiguous, Martindale insists sections 9.2(a) and 9.5 were not the only sections of the operating agreement concerning payment to an expelled member. He argues section 13.10 incorporates additional “rights and remedies,” which the chancery court erroneously failed to consider. Section 13.10 states, in pertinent part: “[R]ights and remedies [under this agreement] are given in addition to any other rights the parties may have by law, statute, ordinance or otherwise.” Martin-dale suggests the chancellor “failed to give life and meaning to [his] express rights and remedies by ‘Law’ or ‘Otherwise.’ ” He argues Mississippi Code Annotated section 79-29-306(3)(a) (repealed 2010);[4] two supreme court decisions, Williford, 55 So.3d 148, and Fought v. Morris, 543 So.2d 167 (Miss.1989); and the implied covenant of good faith and fair dealing provide him some sort of additional “right to fairness and equitable relief.” We agree that discretionary equitable relief is available under some circumstances, but not when the underlying contract is clear and unambiguous, and there is no breach or other similar issue with enforcement.
1. Section 79-29-306(3) (a)
¶ 14. Under section 79-29-306(3)(a), “A court of equity may enforce a limited liability company agreement by injunction or by such other relief that the court in its discretion determines to be fair and appropriate in the circumstances.” (Emphasis added). Martindale argues this statute granted the chancellor authority to look past the unambiguous LLC agreement to somehow craft him an additional and more favorable equitable remedy. But such an assertion ignores one of the basic principals of contract law — that when a “contract is unambiguous, the ‘parties are bound by the language of the instrument.’ ” Delta Pride Catfish, 697 So.2d at 404 (quoting Cherry, 501 So.2d at 419).
¶ 15. While section 79-29-306(3)(a) grants chancellors the discretion to fashion appropriate equitable relief, such as enforcement of an LLC agreement or money damages, we find there must be some sort of breach or other hindrance with the enforceability of an LLC agreement to trigger this equitable power. Otherwise, chancellors are not authorized to disregard the unambiguous terms of an LLC operating agreement that have been enforced to the letter by the remaining members.
2. Bluewater Logistics, LLC v. Williford
¶ 16. We disagree with Martindale’s assessment that the supreme court’s recent decision in Williford authorized the chancellor here to equitably determine the fair market value of his membership interest— rather than limit his review to the express provisions of the operating agreement’s *344 percentage-based arrangement. In Willi-ford, the supreme court upheld a chancellor’s judgment awarding a wronged minority member of two LLCs the fair market value of his membership interests. Id. at 162-63 (¶¶ 63-68). The chancellor found the two LLCs committed a willful, grossly negligent breach of their LLC agreements by ousting Williford then attempting to rescind their initial offer to buy out his twenty-five percent interest in each LLC. Id. at 161 (¶ 55). The supreme court recognized the chancellor’s statutory authority under section T9 — 29—306(3) (a) to enforce LLC agreements by injunction or grant other discretionary relief the chancellor deems fair under the circumstances. Williford, 55 So.3d at 159-60 (¶ 45). But the court did not rewrite basic contract law in doing so. Id. at 162 (¶ 63). Rather, it enforced the terms of the LLCs’ operating agreements against the breaching members, and recognized the chancellor’s statutory authority to fashion appropriate relief. While the LLCs had a right to exclude Williford from the businesses, if they exercised this right, “they had a companion duty to tender payment to him.” Id. at 163 (¶ 67).
¶ 17. Unlike the minority member in Williford, Martindale has not shown the other members of Hortman Harlow breached the law firm’s operating agreement or failed to enforce it. The law firm enforced the contract as written, tendering Martindale payment as contemplated by the operating agreement he freely entered. And there is no suggestion that the firm members exceeded the bounds of the LLC agreement when voting unanimously to terminate him. Absent any breach, we find neither section 79-29-306(3)(a) nor Williford affords Martindale any additional relief.
3. Fought v. Morris
¶ 18. Martindale next suggests the chancellor “abused [his] discretion and applied an erroneous legal standard by failing to require [Hortman Harlow] to treat [Martindale] in an ‘intrinsically fair’ manner.” The doctrine of “intrinsic fairness,” was first recognized by the Mississippi Supreme Court in Fought, 543 So.2d at 171. In Fought, the court held that actions of a majority stockholder toward a minority shareholder in a closely held corporation must be “intrinsically fair” when that majority stockholder stands to benefit as controlling stockholder. Id. Although Fought dealt only with closely held corporations, “the rationale of Fought applies with equal force” to limited liability companies. Williford, 55 So.3d at 161 (¶ 51).
¶ 19. We agree the majority members owed Martindale a duty to act in an “intrinsically fair” manner, but find no indication they breached this duty in administering his proper payout under the contract. Martindale does not claim his termination was in bad faith, only that the remaining members violated their duty of intrinsic fairness to him in enforcing the operating agreement’s payout provision without considering the market value of his membership interest. The law firm expelled and paid Martindale in line with the clear terms of its operating agreement. “With limited exceptions, persons enjoy the freedom to contract. When they do, they are bound by the terms of their contracts.” Titan Indem. Co. v. Hood, 895 So.2d 138, 147 (¶ 41) (Miss.2004). While Martindale’s payout is meager in light of the large settlement after his expulsion, we find Martindale received what he initially bargained for under the firm’s operating agreement.
4. Implied Covenant of Good Faith and Fair Dealing
¶20. Martindale also argues Hortman Harlow’s failure to pay him the *345 fair value of his interest breached the firm’s implied duty of good faith and fair dealing under the operating agreement. “All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement.” Limbert v. Miss. Univ. for Women Alumnae Ass’n, 998 So.2d 993, 998 (¶ 11) (Miss.2008) (citing Morris v. Macione, 546 So.2d 969, 971 (Miss.1989)). Good faith means “the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party.” Cenac v. Murry, 609 So.2d 1257, 1272 (Miss.1992). In contrast, bad faith requires “a showing of more than bad judgment or negligence; rather, ‘bad faith’ implies some conscious wrongdoing ‘because of dishonest purpose or moral obliquity.’ ” Univ. of S. Miss. v. Williams, 891 So.2d 160, 170-71 (¶ 24) (Miss.2004) (quoting Bailey v. Bailey, 724 So.2d 335, 338 (¶ 9) (Miss.1998)). However, a party does not breach the “implied covenant of good faith and fair dealing when the party ‘took only those actions which were duly authorized by the contract.’ ” Limbert, 998 So.2d at 999 (¶ 14) (quoting Gen. Motors Acceptance Corp. v. Baymon, 732 So.2d 262, 269 (¶ 29) (Miss.1999)).
¶ 21. A professional limited liability company must acquire the membership interests of disqualified members. Miss. Code Ann. § 79-29-911(1) (Supp.2011). “If a price for the membership interest is established in accordance with the certificate of formation or written operating agreement or by private agreement, that price controls.” Miss. Code Ann. § 79-29-911(2) (Supp.2011). In compliance with section 79-29-911, Hortman Harlow’s operating agreement specifically provided a formula to determine an expelled member’s interest. By opting against dissolution and instead tendering Martindale a check for $19,800, the law firm acted as authorized by its operating agreement. Because Hortman Harlow could not have acted in bad faith by exercising a contractual right, we find the firm did not breach its implied duty of good faith and fair dealing under the operating agreement. See Limbert, 998 So.2d at 999 (¶ 14). Thus, we find summary judgment was properly granted in Hortman Harlow’s favor.
II. Whether the chancery court erred in failing to make sufficient findings of fact.
¶ 22. Martindale next claims the chancellor abused his discretion by not making findings of fact on his counterclaims for declaratory judgment, judicial dissolution, and breach of good faith and fair dealing. We disagree.
¶ 23. Mississippi Rule of Civil Procedure 52(a) provides: “In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered accordingly.” But a trial court need not make findings of fact on a motion for summary judgment, unless requested by a party under Rule 52(a). Harmon v. Regions Bank, 961 So.2d 693, 700 (¶ 24) (Miss.2007). “Even though evidence may be received by way of sworn affidavits, deposition testimony, and other such evidence, a Rule 56 summary judgment hearing is not an action ‘tried upon the facts without a jury’ so as to trigger Rule 52 applicability.” Id.
¶ 24. Martindale did not request additional findings of fact under Rule 52(a). And although the chancellor had no requirement to make factual findings, his findings of fact were more than adequate *346 to dispose of Martindale’s counterclaims. We find this issue lacks merit.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BARNES, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ, CONCUR. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND ISHEE, J. IRVING, P.J., NOT PARTICIPATING.

. Billy Jack McDaniel chose Hortman Harlow to handle his personal-injury case because his first cousin, Chris McDaniel, was a member of the law firm. Chris and another member of Hortman Harlow, Gene Harlow, were the lead attorneys in the McDaniel case.

. Hortman Harlow did not move for summary judgment with respect to Martindale’s counterclaim for assault, battery, and intentional infliction of emotional distress, and it remains before the chancery court. After granting Hortman Harlow’s motion for partial summary judgment, the chancery court certified the judgment as final under Mississippi Rule of Civil Procedure 54(b).

. We disagree with the dissent's proposed alternate interpretation of the operating agreement's exclusive remedies for expelled members. The dissent argues section 9.5 of the operating agreement could possibly be interpreted to provide compensation for “relinquishment of the right to seek dissolution.” This interpretation is unreasonable because it directly conflicts with the plain language of section 9.5, which upon expulsion of a member under section 9.1(b), unambiguously grants the "other Members” the option to dissolve the company — which they chose not to do here. Furthermore, section 9.5 specifically incorporates section 9.2(a)'s method for calculating an expelled member’s payment. And section 9.2(a) expressly, and very clearly, provides that such payment is made "in lieu *343 of [a terminated member’s ] positive capital account balance." (Emphasis added). There is no ambiguity or inherent conflict merely because the LLC operating agreement expressly provides more favorable terms when a member becomes permanently disabled and unable to perform his duties, as contemplated by section 9.4, than it does in a circumstance such as this one, where he is expelled by the other members.

. In 2010, the Mississippi Legislature revised the Mississippi Limited Liability Company Act. As part of the revisions, the Legislature repealed section 79-29-306, a statute Martin-dale cites frequently in his brief. However, the language of section 79-29-306(3)(a) is now located under Mississippi Code Annotated section 79-29-123(8)(a) (Supp.2011). Because we ultimately find Martindale’s reliance on section 79-29-306(3)(a) is misplaced, we need not address Hortman Harlow’s argument that repealed statutes are of no effect in pending cases.