# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CT-00478-SCT

*BRITT VIRDEN*

*v.*

*CAMPBELL DELONG, LLP, HAROLD H.*
*MITCHELL, JR., ROBERT N. WARRINGTON, P.*
*SCOTT PHILLIPS, BRADLEY F. HATHAWAY,*
*AND FRANK G. POWER*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/10/2020 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| TRIAL COURT ATTORNEYS: | PHILIP MANSOUR, JR |
| | DAVID W. MOCKBEE |
| | D. WESLEY MOCKBEE |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PHILIP MANSOUR, JR |
| ATTORNEYS FOR APPELLEES: | DAVID W. MOCKBEE |
| | D. WESLEY MOCKBEE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 09/28/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. The Circuit Court of Washington County granted law firm Campbell DeLong, LLP,

a declaratory judgment against a former partner of the firm, Britt Virden, who had alleged

breach of contract, among other claims. Virden appealed, and the Court of Appeals affirmed.

*Virden v. Campbell DeLong, LLP*, No. 2021-CA-00478-COA, 2022 WL 4478393, at *11

(Miss. Ct. App. Sept. 27, 2022). On *certiorari* review, we find that Virden's prewithdrawal claims are not precluded by a signed agreement, which only comes into operation in the event of death, termination, withdrawal, or retirement of a partner.

**FACTS AND PROCEDURAL HISTORY**

¶2. Britt Virden practiced law in Greenville, Mississippi, with Campbell DeLong, LLP, since 2001. Although Campbell DeLong, LLP, has operated as a law firm for nearly twenty-five years, it has never had a written partnership agreement that controlled the compensation paid to its partners. The only document signed among the partners was a Restated and Amended Memorandum Agreement, which governed the "withdrawal, termination, or retirement of any of the partners from the firm."

¶3. According to Virden, Campbell DeLong never compensated its partners as a traditional partnership in which the partners share equally in all expenses as well as profits. Rather, Campbell DeLong practiced a partner compensation strategy of "eat what you kill," meaning after an individual partner contributes from his revenue an equal share of the operating expenses of the law firm for calendar year, he or she keeps the remainder as his own personal income.

¶4. In 2018, Virden worked on a case for the Deepwater Horizon oil spill that settled for $12.3 million. Attorneys' fees were $3.1 million. Virden emailed his partners about the settlement's result, making his recommendation for distribution.[1] The partners did not

---

[1] In the same email, Virden suggested his balance was $2.8 million and also suggested the firm pay a bonus to each staff member and associate, pay off a bank loan, and deposit some money into a profit-sharing plan.

immediately respond to Virden's request. When Virden asked the firm's bookkeeper for a distribution of a special draw of his claimed portion to the fee, however, he was denied.

¶5. The partners then called for a meeting at which the allocation was discussed. The firm asserts that there is an implied contract between the partners that the firm's compensation committee would decide how to split any profits. The firm allocated Virden $1.9 million and each of the five other partners $277,000. Virden immediately sent a written objection to the distribution and demanded the amounts be reconsidered and recalculated to allocate the fee pursuant to the normal and customary method.

¶6. A month later, Virden gave notice he was withdrawing from the firm. Virden then sued the firm for breach of contract, unjust enrichment, conversion, breach of fiduciary duties, violation of the Mississippi Partnership Act, and other claims. Virden alleged that the firm breached an implied contract among the partners by allocating to themselves a share of a significant fee that Virden generated.

¶7. The firm and its partners filed their answer and affirmative defenses, which included a motion for declaratory relief, a request to stay discovery, and a counterclaim. In the firm's motion for declaratory judgment, it sought a ruling that all of Virden's claims were encompassed by the Agreement Virden had signed in 2001.

¶8. After a hearing, the circuit court granted the motion for declaratory judgment, stating "that paragraphs 7, 12, 13 and 14 of the Agreement" controlled the outcome of the case.

¶9. The firm prepared an order, but the parties could not agree on the language. As a result, both Virden and the firm submitted proposed orders.

¶10. The order Virden drafted was brief, holding that the circuit court had jurisdiction over the parties, that the motion for declaratory judgment was granted, and that all discovery was stayed.

¶11. The firm's order was lengthier and explained that the Agreement sets forth "[t]he payment obligations in paragraphs 7, 12, and 13 and are the only payment obligations that the [law firm] owed to Virden upon Virden's voluntary withdrawal from the Firm on March 7, 2019."

¶12. The firm's order declared the Agreement was enforceable and said, "Virden is estopped from claiming entitlement to any monetary amount from the [law firm] for acts and/or events which occurred when Virden was a Partner in the Firm except to Virden's entitlement to the amount of Virden's Working Capital Account at the time of his withdrawal."

¶13. Lastly, "Virden has a legal and binding contractual obligation to convey his entire interest in the Firm and in Campbell DeLong Properties, LLC, and in their respective assets to the Firm and Campbell DeLong Properties, LLC . . . ."

¶14. The circuit court signed both orders, and both were then stamped filed by the circuit court clerk.[2] Virden moved for reconsideration. The circuit court denied the motion, and Virden appealed. The Court of Appeals affirmed, and we granted *certiorari* review. ***Virden***, 2022 WL 447893, at *11.

## DISCUSSION

[2] The parties asked why both orders were signed but did not get a response. We do not find this affects the outcome of the case.

4

¶15. The question before us is whether the Agreement, which only comes into operation in the event of the death, termination, withdrawal, or retirement of a partner, governs the dispute that arose over the split of the fee earned by Virden and distributed before Virden withdrew. The Court of Appeals was evenly divided. *Virden*, 2022 WL 4478393, at *11.

¶16. "This Court applies a de novo standard of review to questions of law, including a motion for a declaratory judgment." *S.C. Ins. Co. v. Keymon*, 974 So. 2d 226, 229 (Miss. 2008) (quoting *Pre-Paid Legal Servs. v. Battle*, 873 So. 2d 79, 82 (Miss. 2004)).

¶17. It is undisputed that the only written contract that ever existed between Virden and the other partners was the signed Agreement from 2001, which governed "the withdrawal, termination, or retirement of any of [the partners] from the Partnership."

¶18. Virden's complaint lies not in this Agreement but in the implied contract regarding annual partner compensation that he contends the firm has been operating under for the last twenty-five years. Virden contends that "all partners at Campbell DeLong have an accepted implied contract . . . whereby each partner 'eats what he kills,' after payment of overheard expenses." Virden alleges his former partners breached that implied contract by conspiring to take $1,385,000 that Virden brought in. *Virden*, 2022 WL 4478393, at *12.

¶19. The firm agrees that this implied contract existed; they only disagree about its substance. *Id.* at *13. Virden contends that compensation was determined annually and verbally agreed to by all partners. The firm contends that a three-member "Compensation Committee" determines the amount of "compensation to be paid to each partner annually" and that the committee has broad discretion to make a "final determination" regarding partner

5

compensation. They contend that Virden was "contractually bound to accept the [amount] allocated to him by the Compensation Committee."

¶20.    Therefore, the firm contends, when Virden withdrew on March 7, 2019, Virden's claims merged and subsumed into his rights as a withdrawing partner.  As such, Virden was only entitled to the terms under the Agreement, which is the amount of Virden's working capital account at the time of withdrawal.[3]  Furthermore, Virden is estopped from claiming entitlement to any monetary amount from the firm for acts that occurred when he was a partner.

¶21.    The Court of Appeals agreed, affirming the circuit court's finding that paragraphs 7, 12, 13, and 14 of the Agreement bar Virden's claims. *Id.* at *7.  The Court of Appeals held that the Agreement was clear and unambiguous and had not been breached.  *Id.* at *8.

¶22.    We agree that the Agreement is clear and unambiguous, but we disagree that the Agreement applies to or estops Virden's prewithdrawal claims.

¶23.    Paragraph 7 establishes what the "Working Capital Account" is for each lawyer in the firm. It states that "each Partner's monthly draw is determined by subtracting a certain percentage from such Partner's previous year's income from the Partnership and dividing by 12."

_____

[3]Justice Griffis writes separately, arguing that the trial court's order is not eligible for certification under Mississippi Rule of Civil Procedure 54(b) because the order did not determine the amount that was due or owed. We disagree. The trial court's order stated that "[P]er the express terms of the Agreement, the only payment obligation that Defendants owe to Virden is the amount of Virden's working capital account at the time of Virden's withdrawal from the firm." The Defendants maintain that amount is $25,451.76. Virden disputes that this is all he was owed.

6

¶24.    Paragraph 12 of the Agreement details that a partner sells his or her entire interest in the Partnership and the assets and receives only the value of their Working Capital Account in the event of voluntary withdrawal.

¶25.    Paragraph 13 states that "[a]ll work being performed by the withdrawing Partner on all files and all matters handled by him shall be considered to be and shall be property of the Partnership, and shall not be considered to be files of or property of the withdrawing Partner."

¶26.    Paragraph 14 requires a withdrawing partner to convey his interest back to the partnership.

¶27.    The Court of Appeals, relying on *Martindale v. Hortman Harlow Bassi Robinson & McDaniel PLLC*, 119 So. 3d 338, 342 (Miss. Ct. App. 2012), concluded that when Virden withdrew, he was only entitled to receive the value of his working capital account. *Virden*, 2022 WL 4478393, at *3.  In *Martindale*, an attorney expelled from his firm sought his "fair share" of the firm months after he left when the firm settled a large case. *Martindale*, 119 So. 3d at 340. The firm sought declaratory relief, arguing it had fulfilled the terms of the contract. *Id.*  The Court of Appeals held that the operating agreement provided his exclusive rights to compensation at the time of his expulsion. *Id.* at 342.

¶28.    The Court of Appeals held "[w]hile Martindale's payout is meager in light of the large settlement after his expulsion, we find Martindale received what he initially bargained for under the firm's operating agreement." *Id.* at 344. The attorney could not assert a claim for

7

the fair value of his interest in the firm because the operating agreement specifically provided a formula to determine the value of an expelled member's interest. *Id.* at 344-45.

¶29. Here, Virden is not seeking more for his entire interest in the Partnership and the assets. Virden's complaint is for damages from a breach of an implied contract before he withdrew, not a demand for payment of the value of his interest in the firm. *Virden*, 2022 WL 4478393, at *13. Virden's complaint primarily, if not solely, seeks to recover for a breach-of-contract claim of the implied contract the firm asserts it has regarding partner compensation. We do not find that Paragraph 12 bars "a withdrawing partner from suing his former partners for damages for an alleged breach of a separate implied contract." *Id.* at *14 (Wilson, P.J., dissenting).

¶30. The Court of Appeals also found that Paragraph 13 administers the $3 million fee because the Deepwater Horizon oil spill claim was settled before Virden withdrew. According to the Agreement, the Court of Appeals held that all of the fees and expenses related to the Deepwater Horizon oil spill case were property of the partnership at Virden's voluntary withdrawal. "Therefore it was within the firm's authority to apportion the fee amongst the firm" *Id.* at *6. We find no support for this conclusory statement. Virden's complaint precisely concerns the apportionment of the fee that was handled before he withdrew, and the Agreement relied upon makes no mention of the apportionment of fees prewithdrawal.

¶31. The Court of Appeals did not delve further into this hypothetical, but it posed that had Virden sued while he was still working for the firm, this Agreement would not have been

8

triggered. We are not convinced that Virden would be in any better position. Assuming a partner sued its own firm, the partner would then be terminated, so the Agreement that governs "death, disability, withdrawal, retirement or termination" would still go into effect, leaving Virden no recourse for actions that occurred prior to his withdrawal.

¶32. The other two cases relied upon by the Court of Appeals offer little assistance. In *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 989 (Miss. 2021), a former partner sued his former firm, alleging wrongful termination and other claims. The firm denied the claims and filed a motion to dismiss. *Id.* The circuit court declined, and this Court granted interlocutory review. *Id.* On interlocutory appeal, the firm argued that "the provisions at issue within its operating agreement were structurally unambiguous and authorized the firm to terminate any member . . . for any reason whatsoever." *Id.* at 989. The Court held "that the PLLC agreement unambiguously allows member expulsion without cause in writing[.]" *Id.* at 993.

¶33. In *Sledge v. Grenfell Sledge and Stevens, PLLC*, 263 So. 3d 655, 662 (Miss. 2018), Sledge argued that a certain provision was inapplicable to him because he was no longer a partner or member of the firm after his withdrawal. "Quite opposite is the firm's position that Sledge remains subject to the dispute-resolution provision, because the dispute is related to the Supplement Agreement's withdrawal-of a-member provision." *Id.* This Court agreed with the trial court on the firm's position that the withdrawing partner was bound by the provision at the time of withdrawal. *Id.*

9

¶34.    Beyond the fact that both cases involved lawyer disputes, the similarities are few.  In *Sledge* and *Lawrence*, the attorneys sued for claims that were specifically addressed in the operating agreements, which is not the case here.  Here, Virden's complaint for breach of an implied contract regarding partner compensation was disregarded when the Court of Appeals held that the case is not about annual partner compensation but the interpretation of a written contract regarding a withdrawing partner. *Virden*, 2022 WL 4478393, at *8.

¶35.    The Court of Appeals held that "[b]ecause the parties had an express contract covering the payment to partners of withdrawal, we will not consider any argument regarding an implied or quasi-contract for additional compensation." *Id.*  Furthermore, "two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time." *Id.* (internal quotation mark omitted) (quoting *Rives v. Ishee*, 335 So. 3d 1098, 1103 (Miss. Ct. App. 2022)).

¶36.    We do not find that there is "an express and an implied contract for the same thing, existing at the same time." *Redd v. L & A Contracting Co.*, 246 Miss. 548, 151 So. 2d 205, 208 (1963).  We have an express contract, which, by its terms, "govern[s] the withdrawal, termination of retirement of [partners] from the [firm]" and an implied contract both Virden and the firm assert exists regarding partner compensation. *Virden*, 2022 WL 4478393, at *12 (alterations in original).

¶37.    A contract implied in fact—also referred to as a quasi-contract—"is an obligation created by law, in the absence of an agreement, when and because the acts of the parties or others have placed in the possession of one person

10

money under circumstances that in equity and good conscience he ought not to retain and which in justice and fairness belong to another."

***Triangle Constr. Co. v. Fouche & Assocs., Inc.***, 218 So. 3d 1180, 1187 (Miss. Ct. App. 2017) (quoting ***Franklin v. Franklin ex rel. Phillips***, 858 So. 2d 110, 120 (Miss. 2003)).

¶38. The written contract does not address "the same thing" as the alleged implied contract. ***Redd***, 151 So. 2d at 208. The Agreement does not address the subject of annual partner compensation. The Agreement does not even mention the compensation committee or any division of fees. The Agreement does not provide for day to day operations of the partnership.

¶39. Accordingly, the existence of a written contract does not preclude Virden's claims of an implied contract. *See* 17 C.J.S. *Contracts* § 16 ("An implied agreement is precluded only where the express and the asserted implied contract relate to the same subject matter . . . ."), Westlaw (database updated Aug. 2023); ***Virden***, 2022 WL 4478393, at *13. A partner may maintain an action against another partner for breach of the partnership agreement. Miss. Code Ann. § 79-13-405(b)(1) (Rev. 2013).

¶40. The Court of Appeals found that Virden was paid "exactly what he bargained for under the plain terms of the Agreement." ***Virden***, 2022 WL 4478393, at *8. Virden alleges that he bargained for an implied contract regarding partner compensation that he was not given an opportunity to pursue in light of the declaratory judgment entered against him. We do not find that Virden relinquishes his claims under an implied contract theory because he signed an agreement governing his rights if he withdrew from the firm.

11

¶41. If Virden is able to prove that the implied contract exists and that there was a breach, damages would have accrued when the other partners improperly kept the fees that had been earned by Virden. As such, he would have had causes of action against the firm while he was still a partner and before he withdrew.

¶42. The trial court foreclosed this possibility by granting the firm's motion for a "Final Declaratory Judgment," which it certified under Rule 54(b). The declaratory judgment terminated all of Virden's claims against the firm and ended discovery in the matter pending appeal. In other words, and contrary to how the separate opinion inexplicably interprets it,[4] the declaratory judgment entered against Virden disposed of the case entirely. For reasons explained, this was error. Therefore, we reverse and remand for further proceedings.

## CONCLUSION

¶43. We reverse the judgments of the Court of Appeals and of the Washington County Circuit Court, and we remand the case to the circuit court to allow Virden an opportunity to maintain an action against his former firm for breach of an implied contract regarding partner compensation.

¶44. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS, P.J., CHAMBERLIN AND ISHEE, JJ., CONCUR. GRIFFIS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION. KING, P.J., NOT PARTICIPATING.**

---

[4] Had the trial court denied the firm's motion for a final declaratory judgment and allowed Virden to proceed on his implied contract claim, the separate opinion would then be correct that the trial court's decision would "not [have been] appropriate for certification and appeal pursuant to Rule 54(b)[.] CIRO Op. ¶ 66." But that is not what occurred in this case.

12

**GRIFFIS, JUSTICE, CONCURRING IN RESULT ONLY:**

¶45. I have read the pleadings, motions and responses, the transcript of the argument of counsel, the circuit court judgments, and the record. As a result, I tend to agree that Campbell DeLong, LLP, and the individual defendants may be entitled to a declaratory judgment that the agreement governs the compensation or amount owed to Britt Virden as a withdrawing partner. The circuit court, the Court of Appeals, and now this Court's majority reach a similar conclusion.

¶46. There is a fundamental error with this type of cursory review. There is a fundamental error with the decisions of the circuit court, the Court of Appeals, and now this Court's majority. This Court should not affirm a circuit court's judgment on the merits based only on unsworn pleadings, documents attached to unsworn pleadings, and argument of counsel. This review is not based on procedure authorized by the Mississippi Rules of Civil Procedure. Therefore, I am of the opinion the circuit court judgment and the decision of the Court of Appeals should be reversed. I would remand this case for further proceedings consistent with the Mississippi Rules of Civil Procedure.

      *1.    The "facts" relied on are unsubstantiated.*

¶47. The majority relies on the Court of Appeals' opinion for the "facts" of this case. The source of these "facts" and the appropriate review of these "facts" should be carefully examined. For instance, if this case were before this Court on a Mississippi Rule of Civil Procedure 12(b)(6) motion to dismiss, the source of the "facts" would be the allegations of the complaint, and we would be required to accept the allegations as true. ***Henley, Lotterhos***

13

***& Henley, PLLC v. Bryant***, 361 So. 3d 621, 626 (Miss. 2023). If this case were before the

Court on a Rule 56(c) motion for summary judgment, the source of the "facts" would be the

"pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any," and we would be required to review these facts to determine whether there

is a genuine issue as to any material fact is in dispute and decide whether the movant "is

entitled to a judgment as a matter of law." M.R.C.P. 56(c). If this case were before this

Court after a bench or jury trial, the source of the "facts" would be the evidence admitted at

trial, and our review would be to determine whether "substantial evidence" supported the

findings. ***Franklin v. State***, 136 So. 3d 1021, 1031 (Miss. 2014) ("[T]he jury's decision must

be based on the evidence[.]" (citing ***Sheppard v. State***, 777 So. 2d 659, 662 (Miss. 2000)));

***Joel v. Joel***, 43 So. 3d 424, 429 (Miss. 2010) ("Where there is substantial evidence to support

his findings, this Court is without the authority to disturb his conclusions, although it might

have found otherwise as an original matter." (quoting ***Ferrara v. Walters***, 919 So. 2d 876,

880-81 (Miss. 2005))). If this case were before this Court after the denial of a Mississippi

Rule of Civil Procedure 50(b) motion for judgment notwithstanding the verdict, the source

of the "facts" would also be the evidence admitted at trial, and we would be required to

consider the evidence in favor of the appellee.[5]

---

[5] This Court would

> consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight

¶48. The source of the "facts" in this case is not based on any admissible documentary evidence, testimonial evidence, affidavits,[6] stipulations, depositions, interrogatory responses, or admissions. Even though the record consists of more than eight hundred pages, the circuit court judgments and the appellate opinions are based solely on unsworn pleadings, documents attached to the unsworn pleadings, and argument of counsel. This Court should not affirm a final judgment that is not based on admissible evidence or proper procedure. The courts that have decided this case have simply relied on a cursory review of unsworn pleadings, documents attached to the unsworn pleadings, and the argument of counsel.

> 2. *The Mississippi Rules of Civil Procedure require a declaratory judgment to be considered through a proper procedure, i.e., a motion for summary judgment or trial.*

¶49. The Court of Appeals opinion, in Section III, affirms the trial court's grant of a declaratory judgment and its ruling that "the Agreement is enforceable as written." *Virden v. Campbell Delong, LLP*, No. 2021-CA-00478-COA, 2022 WL 4478393, at *11 (Miss. Ct. App. Sept. 27, 2022) (internal quotation marks omitted). The court, however, cited the de novo standard of review for the grant of summary judgment. *Id.* (citing *Stuart v. St. Dominic-Jackson Mem'l Hosp.*, 311 So. 3d 1192 at 1202 (Miss. Ct. App. 2020)). This case

---

that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Ala. Great S. R.R. Co. v. Lee*, 826 So. 2d 1232, 1235-36 (Miss. 2002) (quoting *Steele v. Inn of Vicksburg, Inc.*, 697 So. 2d 373, 376 (Miss. 1997)).

[6] Actually, there is one affidavit in the record. Virden submitted an affidavit as an exhibit to his motion for reconsideration. Virden's affidavit, however, was filed after the circuit judge ruled and entered the judgments that are the subject of this appeal.

15

was not before the circuit court or the Court of Appeals on a Rule 56 summary-judgment motion. Thus, the summary-judgment standard of review is not appropriate.

¶50. The Court of Appeals opinion, in Section III, cites several decisions from this Court to discuss when a Mississippi Rule of Civil Procedure 57 declaratory judgment is proper. *Id.* at *10. It is crucial to note that in every one of these cases, this Court reviewed either a summary-judgment ruling or a trial on the merits. Not one of these cases was before this Court only on a Rule 57 declaratory judgment. For example, in ***UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.***, 525 So. 2d 746, 752 (Miss. 1987), the Court considered an appeal from a trial on the merits. In ***Bourn v. Tomlinson Interest, Inc.***, 456 So. 2d 747, 748 (Miss. 1984), the Court considered an appeal of a summary judgment. In ***White v. Gautier Utility District of Jackson County (In re Validation of $7,800,000 Combined Utility System Revenue Bond)***, 465 So. 2d 1003, 1011 (Miss. 1985), the Court considered an appeal of a trial on the merits. Indeed, each of these cases considered a declaratory judgment, but the cases were before this Court on appeal from a trial or a summary-judgment ruling.

¶51. Moreover, the majority cites ***South Carolina Insurance Co. v. Keymon***, 974 So. 2d 226, 229 (Miss. 2008) (citing ***Pre-Paid Legal Services v. Battle***, 873 So. 2d 79, 82 (Miss. 2004)), for the proposition that "[t]his Court applies a *de novo* standard of review to questions of law, including a motion for a declaratory judgment." The majority recognizes that the Court in ***Keymon*** cited ***Battle***, 873 So. 2d at 82. But in ***Battle***, this Court specifically stated, "[t]he underlying case was presented to the trial court by way of summary judgment."

16

*Battle*, 873 So. 2d at 82. Although the majority states that *Keymon* was before this Court only on a motion for declaratory judgment, the opinion itself clearly stated that "[f]or the purposes of this appeal, South Carolina concedes the facts alleged by the Keymons in their complaints." *Keymon*, 974 So. 2d at 228 n.1.

¶52. The majority also relies extensively on three cases. In *Martindale v. Hortman Harlow Bassi Robinson & McDaniel PLLC*, 119 So. 3d 338, 341 (Miss. Ct. App. 2012), the Court of Appeals considered a declaratory judgment granted by the chancellor as a partial summary judgment. In *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 990 (Miss. 2021), this Court considered an interlocutory appeal after the circuit court denied Watkins & Eager's motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In *Sledge v. Grenfell Sledge & Stevens, PLLC*, 263 So. 3d 655, 660 (Miss. 2018), the Court considered a declaratory judgment that was procedurally presented by both parties filing summary-judgment motions.

¶53. There are a number of recent decisions by this Court that have considered declaratory judgments. These decisions, however, were appealed after the trial court ruled on a motion for summary judgment or held a trial on the merits. *See Bd. of Supervisors for Lowndes Cnty., Miss. v. Lowndes Cnty. Sch. Dist.*, 367 So. 3d 167, 169 (Miss. 2023); *Healy v. AT&T Servs., Inc.*, 362 So. 3d 14 (Miss. 2023); *WBL SPO I, LLC v. W. Town Bank & Tr.*, 359 So. 3d 1069, 1071 (Miss. 2023); *Lumumba v. City Council of Jackson*, 358 So. 3d 318, 320-21 (Miss. 2023); *State ex rel. Watson v. RW Dev., LLC*, 357 So. 3d 1028, 1034 (Miss. 2023); *TransMontaigne Op. Co., L.P. v. Loresco I, LLC*, 361 So. 3d 89 (Miss. 2023); *Miss. Hub,*

17

*LLC v. Baldwin*, 358 So. 3d 305, 307 (Miss. 2023); *Saunders v. Nat'l Collegiate Athletic Ass'n*, 352 So. 3d 618, 622-23 (Miss. 2022); *Jones Cnty. Sch. Dist. v. Covington Cnty. Sch. Dist.*, 352 So. 3d 1123, 1126 (Miss. 2022); *State ex rel. Watson v. Long Beach Harbor Resort, LLC*, 346 So. 3d 406, 409 (Miss. 2022); *Miss. Farm Bureau Cas. Ins. Co. v. Powell*, 336 So. 3d 1079, 1082 (Miss. 2022); *Omega Protein, Inc. v. Evanston Ins. Co.*, 336 So. 3d 128, 130 (Miss. 2022); *Kelly v. Ocwen Loan Servicing LLC*, 329 So. 3d 439, 442-43 (Miss. 2021); *Singing River MOB, LLC v. Jackson Cnty.*, 342 So. 3d 140, 145-46 (Miss. 2021); *Viking Ins. Co. of Wis. v. Miss. Farm Bureau Cas. Ins. Co.*, 324 So. 3d 772, 775 (Miss. 2021).

¶54. The only possible exception other than the one discussed above in *Keymon* may be *Scioto Properties SP-16, LLC v. Graf*, 349 So. 3d 172, 175 (Miss. 2022). There, this Court considered an appeal after the trial court denied the parties' motion for summary judgment and, instead, ruled on the motion for declaratory judgment. *Id.* The opinion revealed:

> Scioto and Brandi's Hope sought summary judgment on this issue, which the chancery court denied following a hearing.
>
> The Grafs, Scioto, and Brandi's Hope then submitted to the chancery court a *joint stipulation of facts*. Based on this additional evidence, the Grafs renewed their request for a declaratory judgment. And the chancery court, having been advised no further hearing was necessary, granted their motion.

*Id.* (emphasis added); *see also SRHS Ambulatory Servs., Inc. v. Pinehaven Grp., LLC*, 348 So. 3d 295, 298 (Miss. 2022) (trial court denied summary-judgment motion but granted Pinehaven's motion for a declaratory judgment ruling that SRHS's purchase of the twelve-acre tract was valid and enforceable). But *Keymon*, *Scioto Properties*, and *SRHS*

18

involved a declaratory judgment after the consideration of a summary-judgment motion or based on conceded facts.

¶55. The present case is not before this Court on a Rule 12(b)(6) motion, a Rule 56(c) motion, or a trial on the merits. It is before the Court only after an argument by counsel with no procedural rule to authorize an appealable judgment.

> 3. *A Rule 57 declaratory judgment is a form of relief, not a procedural rule that authorizes pretrial summary resolution.*

¶56. A declaratory judgment may be granted only pursuant to Mississippi Rule of Civil Procedure 57. Rule 57(a) clearly establishes the proper procedure:

> **(a) Procedure.** Courts of record within their respective jurisdictions may declare rights, status, and other legal relations regardless of whether further relief is or could be claimed. The court may refuse to render or enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding.
>
> *The procedure for obtaining a declaratory judgment shall be in accordance with these rules*, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in actions where it is appropriate.
>
> The court may order a speedy hearing of an action for declaratory judgment and may advance it on the calendar. The judgment in a declaratory relief action may be either affirmative or negative in form and effect.

Miss. R. Civ. P. 57(a) (emphasis added).

¶57. Rule 57(b) creates a *remedy* for the court to make a "declaration of rights" based on a "written contract." Miss. R. Civ. P. 57(b). Rule 57(b) states:

> (1) Any person interested under a . . . written contract, . . . , or whose rights, status, or other legal relations are affected by a . . . contract . . . , may have determined any question of construction or validity arising under the . .

19

. contract . . . , and obtain a declaration of rights, status or other legal relations thereunder.

(2) A contract may be construed either before or after there has been a breach thereof.

Miss. R. Civ. P. 57(b).

¶58. Rule 57 does not create a procedure for a court to grant a declaratory judgment. Instead, Rule 57(a) clearly states that "[t]he procedure for obtaining a declaratory judgment shall be in accordance with these rules." Miss. R. Civ. P. 57(a).

¶59. Here, the circuit court, the Court of Appeals, and now the majority fail to recognize that there is no declaratory-judgment-type summary procedure that authorizes the pretrial determination of a declaratory judgment based solely on the unsworn pleadings, documents attached to the unsworn pleadings, or argument of counsel.

¶60. Instead, Mississippi Rule of Civil Procedure 56 specifically contemplates that declaratory-judgment claims may be decided as a summary judgment or partial summary judgment:

> **(a) For Claimant.** A party seeking to recover upon a claim, counter-claim, or cross-claim, *or to obtain a declaratory judgment may*, at any time after the expiration of thirty days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.
>
> **(b) For Defending Party.** A party against whom a claim, *counter-claim*, or cross-claim is asserted or *a declaratory judgment is sought* may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

Miss. R. Civ. P. 56 (emphasis added).

20

*4.      The purpose of Rule 57 declaratory judgments is to provide a remedy.*

¶61.    The "Purpose of Declaratory Judgments" has been explained as follows:

Actions for declaratory judgments represent a comparatively recent development in American jurisprudence. The traditional and conventional concept of the judicial process has been that the courts may act only when a complainant is entitled to a coercive remedy, such as a judgment for damages or an injunction. Until a controversy had matured to a point at which that relief was appropriate and the person entitled thereto sought to invoke it, the courts were powerless to act.

. . . .

In all of these situations *the declaratory-judgment remedy* provides a useful solution. *It gives a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy* and in cases in which a party who could sue for coercive relief has not yet done so. The declaratory judgment remedy enlarges the judicial process and makes it more pliant and malleable by putting a new implement at the disposal of the courts. It always is discretionary with the courts whether to make use of this procedure. The jurisdiction of the courts is not expanded and requests for declaratory judgments may be heard only in cases that otherwise are within their jurisdiction. Nor may the court grant a declaratory judgment in the absence of an actual controversy.

The remedy made available by . . . Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued. . . . It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty and expedient, and inexpensive means for declaring in one action the rights and obligations of litigants.

10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2751, Westlaw (database updated Apr. 2023) (emphasis added) (footnotes omitted) (citations omitted).

21

¶62. Despite the clear language of Rules 56 and 57, neither the circuit court, the Court of Appeals, nor the majority of this Court even attempt to identify a procedural rule that was the basis of and authority for the circuit court's grant of the declaratory judgment in the judgments that are the subject of this appeal.

¶63. A further illustration of this can be found in *Northeast Mental Health-Mental Retardation Commission v. Cleveland*, 126 So. 3d 1020 (Miss. Ct. App. 2013). There, the Court of Appeals considered an appeal of the denial and partial grant of a summary judgment that decided the validity of a long-term lease. *Id.* at 1022. After the Commission voted to void the lease, the Commission filed a declaratory judgment action that asked the court to "have the lease declared void." *Id.* Cleveland's counterclaim asked for damages for breach of contract and for the court to declare the lease enforceable. *Id.* "Both parties filed cross motions for summary judgment." *Id.* The chancellor denied the Commission's motion for summary judgment and partially granted Cleveland's motion. *Id.* The appeal considered the chancellor's decision on the summary judgment, which included a decision on the declaratory-judgment claim. *Id.* at 1024.

¶64. Similarly, in *Colom Law Firm, LLC v. Board of Trustees*, the firm sued the Columbus Municipal School District and asked for declaratory and injunctive relief. *Colom L. Firm, LLC v. Bd. of Trs.*, 16 So. 3d 692, 693 (Miss. 2009). The School District filed a motion for "partial judgment on the pleadings or for partial summary judgment." *Id.* at 694. "The trial court granted the School District's motion and dismissed the part of the Complaint

that sought to have the meetings declared a nullity." *Id.* The order granting partial summary judgment was appealed. *Id.*

¶65. The judgments that are the subject of this appeal should be reversed because there is no procedural rule that permits a Rule 57 declaratory judgment to be used as a procedural rule. Instead, the Mississippi Rules of Court clearly contemplate the disposition of declaratory-judgment claims through a Rule 56 summary-judgment motion or a trial on the merits based on admissible evidence.

   5.     *This case is not properly appealable under Rule 54(b).*

¶66. In addition, this case is not appropriate for certification and appeal pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure. Therefore, I would reverse the judgment of the Court of Appeals, dismiss this appeal, and remand this case to the trial court for further proceedings.

¶67. "It is incumbent on trial attorneys and trial judges to recognize that Rule 54(b) judgments must be *reserved for rare and special occasions*. This case is not one of them." ***Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.***, 512 So. 2d 897, 900 (Miss. 1987) (emphasis added). Rule 54(b) provides:

> **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action . . . , *the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment*.

Miss. R. Civ. P. 54(b) (emphasis added).

23

¶68. "To determine the validity of the Rule 54(b) certification, we focus on what was actually decided." ***Brown v. Collections, Inc.***, 188 So. 3d 1171, 1175 (Miss. 2016). At the end of the May 26, 2020 hearing on the motion for declaratory relief, the trial court made the following oral ruling from the bench:

> The Court's of the opinion that it is an enforceable agreement, that a declaratory judgment is warranted to the Campbell DeLong firm, and therefore this Court's going to grant the declaratory judgment.
>
> Mr. Mockbee, you-all prepare me an order granting the declaratory judgment, and I will sign off on it.
>
> Anything else that needs to go into that order, put it there. But I'm of the opinion that Paragraphs 7, 12, 13 and 14 of that agreement are the paragraphs that control in this situation; and because I'm of that opinion, declaratory judgment is warranted in this case.

¶69. Almost five months later, on October 13, 2020, the trial court executed and entered not one but two orders. The trial court executed ***both*** of the orders presented by the parties. The order submitted by Virden read:

> This matter being before the court on the motion of the defendant Campbell DeLong, LLP for Declaratory Judgement and the Court having reviewed the various pleadings and hearing arguments of counsel hereby finds as follows
>
> 1.    The Court has jurisdiction over the parties in the subject matter herein.
>
> 2.    That based upon the pleadings filed in this case and the applicable cases, the Court is of the opinion that the defendants' motion for Declaratory Judgement is well taken and shall therefore be granted.
>
> 3.    [The] Court further finds that all discovery in this matter shall be and same is hereby stayed pending an appeal of this ruling.

The order submitted by the defendants read:

24

The Court, having considered the pleadings, motions, oral arguments of counsel for the parties[,] and the law, and having reviewed all matters herein, finds that Defendants' Motion for Declaratory Judgment is well-taken and is therefore GRANTED.

As more fully stated by this Court during the hearing, this Court declares that the Amended and Restated Memorandum Agreement (the "Agreement"), which has been in place since 2001 and which was signed by Plaintiff Britt Virden (the "Plaintiff" or "Virden") in 2001[,] sets forth the Defendants payment obligations to Plaintiff upon Plaintiffs withdrawal from Campbell DeLong. LLP (the "Firm") as more specifically set forth in paragraphs 7, 12, and 13 of the Agreement. The Agreement's payment obligations in paragraphs 7, 12, and 13 are the only payment obligations that the Defendants owed to Virden upon Virden's voluntary withdrawal from the Firm on March 7, 2019.

Furthermore[,] the Court finds that Defendants' Motion to Stay is well-taken and is GRANTED. Discovery is hereby stayed during the time allowed to file an appeal of this Declaratory Judgment.

Finally, the Court finds that there is no just reason for delay of entry of this declaratory judgment as judicial economy will benefit from certifying this declaratory judgment as final. Considering this declaratory judgment, which finds that the Agreement governs the Plaintiffs claims, resolves all of Plaintiffs claims and all but Counts Three and Five of Defendants' counterclaims, all parties would be prejudiced if this declaratory judgment was not certified as final and discovery was allowed to continue. Therefore, this Court expressly directs and enters this Miss. R. Civ. P. 54(b) Declaratory Judgment in favor of Defendants.

IT IS THER[E]FORE ORDERED AND ADJUDGED that:

Defendants' Motion for Declaratory Judgment is GRANTED, and the Court hereby declares that:

(1) the Agreement is enforceable as written;

(2) all monetary claims asserted by Virden in this action against Defendants are governed by the express terms of the parties' Agreement;

(3) per the express terms of the Agreement, the only payment obligation that Defendants owe to Virden is the amount of Virden's Working Capital Account at the time of Virden's withdrawal from the Firm;

(4) per the Agreement, Virden is estopped from claiming entitlement to any monetary amount from the Defendants for acts and/or events which occurred when Virden was a Partner in the Firm except to Virden's entitlement to the amount of Virden's Working Capital Account at the time of his withdrawal;

(5) per Paragraph 14 of the Agreement[,] Virden has a legal and binding contractual obligation to convey his entire interest in the Firm and in Campbell DeLong Properties[,] LLC[,] and in their respective assets, to the Firm and Campbell DeLong Properties[,] LLC[,] and he is hereby ordered to do so within thirty (30) days of this final judgment being entered and provided that no appeal is taken from this Final Declaratory Judgment;

(6) that there is no just reason for delay, and, therefore, this Declaratory Judgment is entered as a final judgment as to the matters declared above pursuant to Miss. R. Civ. P. 54(b); and

Defendants' motion to stay discovery is GRANTED for such time as is allowed for any appeal of this Declaratory Judgment.

Both orders are referenced in the notice of appeal.

¶70.   In *Cleveland*, the Court of Appeals held that "just because an order is declared to be final and appealable does not necessarily make it so." *Cleveland*, 126 So. 3d at 1021-22. The court explained:

### II.   *Invalidity of Rule 54(b) Certification*

The chancellor's grant of partial summary judgment did not decide a claim between the two parties. Rather, *it merely decided an issue within their claims-whether the contract was enforceable*. This decision resulted in the denial of summary judgment to the Commission. And the denial of summary judgment is an interlocutory order that may only be appealed by permission. The chancellor's decision also led to the partial grant of summary judgment in favor of Cleveland. *But none of Cleveland's claims were fully resolved.* The chancellor was clear in his order that, despite the contract being enforceable as a matter of law, full summary judgment could not be granted because there were still "genuine issues of material fact" concerning whether the Commission could validly take actions to rescind the contract.

26

> *Because the chancellor's decision left a portion of Cleveland's claim pending, the chancellor's order did not fall within that "limited category of decisions" in which Rule 54(b) may be applied.* M.R.C.P. 54(b) cmt. *Thus, the Rule 54(b) certification is invalid*, and the decision that is the subject of this appeal is not a final, appealable judgment. Lacking jurisdiction to address the merits of the chancellor's decision, we dismiss the appeal.

*Id.* at 1024 (emphasis added) (citation omitted).

¶71.    In *Monument Management Limited Partnership I v. City of Pearl*, the United States Court of Appeals for the Fifth Circuit considered a similar issue. *Monument Mgmt. Ltd. P'ship I v. City of Pearl*, 952 F.2d 883 (5th Cir. 1992). There, Monument, the owner of a grocery store, sued the City of Pearl for "physical damages, lost income, lost profits, lost business value, and punitive damages" allegedly caused by road closures and the City's use of the store's property for parking and storage. *Id.* at 884. The district court granted partial summary judgment for the City as to Monument's alleged damages for "lost income, lost profits, and lost business value." *Id.* The district court also certified its ruling for appeal pursuant to Federal Rule of Civil Procedure 54(b). *Id.* at 885.

¶72.    The Fifth Circuit held that certification was improper and dismissed the appeal. *Id.* The court held that a ruling "must dispose of [a] claim *entirely*" before it may be certified under Rule 54(b). *Id.* The court reasoned that the district court's order granting partial summary judgment "disposed of most of the elements of damages arising from Monument's inverse condemnation claim against the City, but it did not dispose of that claim in its entirety." *Id.* Because "the judgment [did] not dispose of the entirety of any one claim, it [could not] be made an appealable judgment by recourse to Rule 54(b)." *Id.* (internal quotation mark omitted) (quoting *Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985)).

27

¶73. In ***Colom Law Firm***, a law firm and its lawyers sued a school board for holding unlawful "special board meetings," which allegedly prevented the firm from bidding on a contract to provide legal services. ***Colom L. Firm***, 16 So. 3d at 693-94. The firm sought an order to declare void a resolution that extended the contract of another law firm, injunctive relief, and attorneys' fees. ***Id.*** at 693. The chancery court granted a partial summary judgment in favor of the school board "and dismissed the part of the [c]omplaint that sought to have the [special] meetings declared a nullity." ***Id.*** at 694. The chancery court also certified its ruling as final under Rule 54(b). ***Id.***

¶74. This Court dismissed the appeal. ***Id.*** at 695-96. The Court held that certification under Rule 54(b) was improper because "the trial court ruled only as to the scope of damages" while the "liability claim [was] still pending." ***Id.*** at 695. The Court emphasized that a "decision that leaves a portion of [a] claim pending . . . does not fall within the ambit of Rule 54(b)." ***Id.*** (emphasis omitted) (quoting M.R.C.P. 54(b) cmt.); *accord **Byrd v. Miss. Power Co.***, 943 So. 2d 108, 111-12 (Miss. Ct. App. 2006) (holding that the circuit court improperly certified a grant of "partial summary judgment on the issue of damages in one count of a seven-count complaint . . . without even a determination . . . of . . . liability on that claim").

¶75. Here, Britt Virden and his former partners and law firm have a dispute over how much money is owed under their express and implied contracts. Although there are claims for breach of contract and declaratory relief, as well as several other claims, the essence of the controversy is the proper division of 2018 profits—partner compensation—or the governance of the withdrawal provision. Virden claims he is entitled to a total of $2.8 million; his former

partners claim Virden is only entitled to $1.9 million. Virden asks for an award of monetary damages of roughly $900,000 in addition to 2018 income. The defendants also contend that Virden owes them the sum of $1,143,000.

¶76. As a result, for the trial court to enter an appealable judgment solely on the defendants' motion for declaratory judgment, *the trial court had to rule and enter judgment on the amount of money the defendants owed Virden*. Although the defendants' motion clearly asked the trial court to rule that "[u]nder the Agreement, Virden's Working Capital Account as of March 7, 2019 is $25,451.76," the counterclaim alleged that Viden owed the firm $1,143,000. Neither the trial court's oral ruling nor the two executed judgments determined the amount that was due or owed.

¶77. The circuit court judgments are not appropriate for review under Rule 54(b) because the ruling "merely decided an issue"; and it did not "fully resolve[]" all claims. **Cleveland**, 126 So. 3d at 1023-24. Instead, the trial court's "decision left a portion of [the] claim pending" and "did not fall within that 'limited category of decisions' in which Rule 54(b) may be applied." *Id.* at 1024 (citing Miss. R. Civ. P. 54(b) cmt.).

¶78. Nevertheless, the majority disagrees and asserts,

> The trial court's order stated that "[P]er the express terms of the Agreement, the only payment obligation that Defendants owe to Virden is the amount of Virden's working capital account at the time of Virden's withdrawal from the firm." *The Defendants maintain that amount is $25,451.76. Virden disputes this is all he was owed.*

Maj. Op. ¶ 20 n.3 (emphasis added). But while the majority disagrees, it acknowledges that the trial court's orders are not final. "A final, appealable, judgment is one that 'adjudicat[es]

29

the merits of the controversy which settles all issues as to all the parties' and requires no further action by the lower court." ***Walters v. Walters***, 956 So. 2d 1050, 1053 (Miss. Ct. App. 2007) (alteration in original) (citing ***Banks v. City Fin. Co.***, 825 So. 2d 642, 645 (Miss. 2002), *overruled on other grounds by* ***Sawyers v. Herrin-Gear Chevrolet Co., Inc.***, 26 So. 3d 1026, 1034 (Miss. 2010)). Here, as the majority notes, further action is required by the circuit court to determine the amount owed by or to any of the parties; the court on remand must still determine the disputed and unresolved damages.

¶79. Therefore, I am of the opinion that the trial court's orders are not eligible for certification under Rule 54(b), the trial court erred by certifying the orders as final, and this Court lacks jurisdiction to review the case on appeal. I would reverse the judgment of the Court of Appeals, dismiss this appeal, and remand this case to the trial court for further proceedings.

**COLEMAN, J., JOINS THIS OPINION.**

**MAXWELL, JUSTICE, DISSENTING:**

¶80. I disagree that this case should be reversed and remanded. Instead, for the reasons set forth by the Court of Appeals in its opinion affirming the trial court's judgment, I would affirm.